*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0596

QUINN, RACUSIN & GAZZOLA CHARTERED, APPELLANT,

V.

PAVICH LAW GROUP, P.C., *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-004580-B)

(Hon. Heidi M. Pasichow)

(Submitted May 8, 2023                                Decided February 15, 2024)

*Robert E. Kelly*, with whom *Tara A. Barnes* was on the brief, for appellant.

*C. Allen Foster*, with whom *Erik D. Bolog*, *Eric C. Rowe*, *Masten Childers, III*, *Stuart A. Berman*, *Joe Reeder*, and *William P. McGrath, Jr.*, were on the brief, for appellees.

Before EASTERLY, MCLEESE, and SHANKER,[*] *Associate Judges*.

SHANKER, *Associate Judge*: After the law firm Quinn, Racusin & Gazzola

Chartered ("QRGC") moved to vacate an arbitration award arising from a dispute

---

[*] Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Associate Judge Shanker has been assigned to take her place on the panel. *See* Administrative Order 1-24.

with several other law firms, the other firms opposed the motion and sought confirmation of the arbitration award. The trial court dismissed the vacatur motion on the grounds that it had been both filed and served out of time, and it subsequently confirmed the arbitration award. QRGC now appeals that decision, but in an effort to invalidate the entire proceeding, claims for the first time in its reply brief that the Superior Court lacked subject-matter jurisdiction to entertain the original vacatur motion because the arbitration award at issue was a non-final interim award. We conclude that the trial court had statutory authority to review the interim award. Additionally, although we hold that QRGC timely filed its vacatur motion, we agree with the Superior Court that service was untimely and affirm the court's dismissal on this basis. Finally, we hold that the trial court erred by confirming the arbitration award under D.C. Code § 16-4423(e) based solely on its dismissal of QRGC's motion, and we remand for the trial court to consider whether the arbitration award should be confirmed on the merits.

## I. Factual Background and Procedural History

In 2009, Wye Oak Technology, Inc., sued the Republic of Iraq in the United States District Court for the District of Columbia over a contractual dispute relating to the refurbishing of Iraqi military equipment. The litigation continued for roughly

ten years until Wye Oak obtained a substantial monetary judgment in 2019. The Republic of Iraq successfully appealed that decision, and litigation has continued.

QRGC served as Wye Oak's counsel leading up to the litigation and was heavily involved in its initial stages. Wye Oak later retained Pavich Law Group to assist, and QRGC's role gradually diminished as the litigation progressed. Wye Oak retained two more firms (Whiteford, Taylor & Preston and Kalbian Hagerty), and, in December 2019, all four firms drafted an "Agreement Concerning Attorneys' Fees" to resolve disputes over compensation. The agreement established a collective 46% contingency fee for all four firms and further provided that "[a]ny claim or dispute between any of the aforementioned parties arising out of or relating to this Agreement . . . including any fee owed to any party, w[ould] be resolved by arbitration in the District of Columbia."

In February 2020, before Wye Oak had received any award, the Pavich Law Group filed a demand for arbitration with JAMS (formerly the "Judicial Arbitration Management Services") concerning the allocation of attorneys' fees from the Wye Oak litigation. The firm asserted several tort claims against QRGC and sought to reduce or eliminate QRGC's fee apportionment under the agreement.

On August 12, 2021, the arbitrator resolved various questions of liability in favor of the Pavich Law Group and the other appellees. As a result, it issued an

interim award allocating the agreement's 46% contingency fee as follows: 27.5% to Whiteford, Taylor & Preston; 18% to Pavich Law Group; 0.5% to Kalbian Hagerty; and 0% to QRGC. The interim award did not give any attorneys' fees to QRGC because the arbitrator concluded that QRGC had "tortiously interfered with [Pavich Law Group]'s contractual relationships with Wye Oak Technology." The arbitrator additionally stated that "[i]t is not intended that this Interim Award be subject to judicial review."

On November 9—eighty–nine days after the interim award was issued—QRGC electronically submitted in Superior Court a motion to vacate the arbitration award. Although the petition referenced several attached exhibits, QRGC did not include them with the filing.

On November 11, QRGC emailed the appellees to notify them that it had filed the vacatur motion but did not attach a copy of the motion. The email also did not ask the appellees to accept electronic service of that motion.

On December 3, QRGC received an electronic notification that its motion had been rejected by the Superior Court's clerk's office because it had been coded as a "petition" (subject to a lower filing fee) when it should have been coded as a "complaint." On December 7—117 days after the interim award—QRGC re-filed its motion with the correct coding.

QRGC served the vacatur motion on the appellees in January 2022: Wye Oak on January 10, Kalbian Hagerty on January 11, and the Pavich Law Group on January 17. QRGC left its motion outside the door of Whiteford, Taylor & Preston's office on January 18.

At the end of January, the appellees opposed the vacatur motion and cross-moved to confirm the arbitration award. In addition to raising substantive arguments, the appellees claimed that QRGC (1) had not filed its motion within 90 days of the award as required by the D.C. Revised Uniform Arbitration Act ("DCRUAA"), D.C. Code § 16-4423(c); and (2) had not served its motion within three months of the award as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12. Pursuant to these provisions, the deadlines were November 10 and 12, respectively.

In February, QRGC moved to file exhibits to accompany its original motion to vacate. QRGC claimed in this new motion that it had not attached any exhibits to the vacatur motion because it did not want to run afoul of a confidentiality agreement that all the arbitration parties (except QRGC) had entered into.[1] After being told by

---

[1] The confidentiality agreement prevented the public disclosure of any "[i]nformation exchanged or used during th[e] [arbitration], including, without limitation, documents exchanged during the discovery phase, deposition testimony, if any, presentations at the hearing, and communications with the Arbitrator."

the Superior Court's clerk's office that "there was no mechanism to file exhibits to an original pleading under seal," QRGC resolved "to file the Petition and, subsequently to file the supporting exhibits with an appropriate motion once the Respondents were served with the Petition and [had] filed their responses."

The appellees opposed the exhibits motion, arguing that QRGC had violated Super. Ct. Civ. R. 70-I when it failed to attach required documents to its original vacatur motion and that it could not retroactively cure that defect. They further asserted that the confidentiality agreement was not a valid excuse for the original omission because (1) QRGC had not signed it and (2) none of the exhibits required by Rule 70-I was covered by the agreement.

In March, the trial court dismissed QRGC's motion to vacate. It held that "there was no barrier to Petitioner's ability to include the documents required by Rule 70-I with the original Petition," and that QRGC's failure to abide by that rule required dismissal. The trial court also held, in the alternative, that QRGC's vacatur motion had been filed and served beyond the statutory time limits under D.C. and federal law. In what appears to be an inadvertent oversight, the trial court did not rule on the outstanding request to confirm the interim award but nevertheless closed the case.

The appellees subsequently moved to alter or amend the order on the ground that denying QRGC's vacatur motion required the court to confirm the award pursuant to D.C. Code § 16-4423(e). QRGC opposed the motion, claiming that Section 16-4423(e) did not apply to "technical" dismissals, as opposed to denials on the merits. The trial court agreed with the appellees, granted their motion, and confirmed the interim award.

## II. Standard of Review

We review orders confirming or vacating an arbitration award de novo. *Fairman v. District of Columbia*, 934 A.2d 438, 442 (D.C. 2007).

## III. Discussion

The appellees contend, and the trial court held, that QRGC's vacatur motion was both untimely and noncompliant with the service requirements mandated by the FAA. Before reaching either of those issues, we first address QRGC's belated argument that the trial court lacked jurisdiction over QRGC's original petition.

### A. Jurisdiction

Despite having initiated this litigation, QRGC argues for the first time in its reply brief that the Superior Court "lacked [subject-matter] jurisdiction" over the

interim award because that decision was not a final resolution of the matters before the arbitrator.

We normally do not consider arguments raised for the first time in a reply brief. *See Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1082 (D.C. 2008) ("[A]rguments raised for the first time in a reply brief come too late for appellate consideration"). Because, however, subject-matter jurisdiction determines a court's power to hear a case, "[l]ack of subject matter jurisdiction is not waivable and may be raised at any time." *Long v. United States*, 940 A.2d 87, 100 (D.C. 2007). Indeed, even where no party addresses it, we have an obligation to consider the issue sua sponte. *In re D.M.*, 771 A.2d 360, 364 (D.C. 2001). Appellees argue that the issue raised by QRGC does not go to the Superior Court's subject-matter jurisdiction, such that we should not consider QRGC's untimely argument. We need not resolve this dispute, however, because, even assuming the non-final nature of an interim arbitration award implicated the Superior Court's subject-matter jurisdiction, by statute the trial court had authority to rule on QRGC's motion to vacate the interim award.

QRGC seems to assume that the FAA governs the question of the trial court's authority to review the arbitrator's interim award. Appellees do not appear to take a clear position on whether that issue would be governed by the FAA or instead by

the DCRUAA. We hold that DCRUAA governs that issue. *See Doucette v. Neutron Holdings, Inc.*, 288 A.3d 339, 342 (D.C. 2023). We therefore have no occasion to discuss the question whether, and if so when, the FAA authorizes judicial review of non-final arbitral rulings.

The DCRUAA explicitly provides that a "preaward ruling" can be "incorporated into an award" and then can be judicially reviewed. D.C. Code § 16-4418. Although this court does not appear to have addressed the issue, this provision seems to have been intended to confer authority on trial courts to review non-final arbitral rulings. That is what was apparently intended in the uniform act the DCRUAA was modeled upon. 7 U.L.A. Uniform Arbitration Act § 18, cmt. 1 (2000). QRGC does not dispute that the interim award in this case is an "award" for purposes of this provision and the other pertinent provisions of the DCRUAA, such as D.C. Code §§ 16-4422 (granting trial court authority to confirm awards) and 16-4423 (granting trial court authority to vacate awards). That makes sense because the arbitrator called the ruling an award, and the ruling appears to have been entered and served in conformity with D.C. Code § 16-4419 (governing entry of awards).

In sum, the trial court had authority under the DCRUAA to review the interim award here. We note that prudential questions of ripeness might arise in connection

with trial-court review of non-final arbitral awards, but we do not view such questions as going to the jurisdiction of the Superior Court where a statute affirmatively grants authority to review such awards. We see no reason to consider those concerns in the present case, given that the issue was belatedly raised and we see no extraordinary circumstance warranting consideration of the issue. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) ("We think it is clear on these facts that petitioners have demonstrated sufficient hardship, and that their question is fit for our review at this time. To the extent the dissent believes that the question is prudentially unripe, we reject that argument as waived . . . .").

The remaining question is whether this court has jurisdiction over the appeal from the trial court's order in this case. That order confirmed the arbitral award, so it appears to be reviewable under the express terms of the DCRUAA. D.C. Code § 16-4427(a)(3). Again, while potential issues of prudential ripeness lurk, we do not see those issues as implicating our jurisdiction, and we decline to consider them here in light of QRGC's untimely argument. *See id*.

**B.    Timeliness**

**1.    Filing**

The FAA requires that the "notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Because the interim award was issued and noticed on August 12, 2021, the deadline to file the motion under the FAA was November 12. The DCRUAA provides that a motion to vacate an arbitration award "shall be filed within 90 days after the movant receives notice of the award." D.C. Code § 16-4423(c). Under the DCRUAA, the deadline to file the motion was November 10. We need not decide whether the FAA or the DCRUAA applies to the timeliness of the filing, because we conclude that the filing was timely under both. *Compare Doucette*, 288 A.3d at 342 (applying D.C. rather than federal law to resolve a procedural issue, in the context of arbitration), *with Badgerow v. Walters*, 596 U.S. 1, 8 n.2 (2022) (noting that the Supreme Court has never decided whether the procedural provisions of the FAA apply in state court). While QRGC's motion to vacate was not officially docketed until December 7, it was initially submitted via electronic filing on November 9—either one day or three days before the deadline. That initial submission, although later rejected, was sufficient to render the motion timely.

Under D.C. Super. Ct. Civ. R. 5(d)(5)(A), "[e]lectronic filing is complete on transmission, unless the filing party learns that the attempted transmission was undelivered or undeliverable." In *Parker v. K & L Gates, LLP*, 76 A.3d 859 (D.C. 2013), we held that a "motion is properly understood to have been filed on . . . the date that the electronic confirmation initially showed it as having been filed," even if the "motion [wa]s subsequently rejected but then apparently accepted and docketed." *Id.* at 863 (citing D.C. Super Ct. Civ. R. 5).

Additionally, according to Superior Court Administrative Order 05-04, "[a]ny document filed electronically shall be considered as filed with the Superior Court when it is submitted for eFiling to the Vendor and transmission is completed ('authorized date and time')." Super. Ct. Admin. Order 05-04, EF Rule 6 (May 17, 2005). Once transmitted, "the Vendor shall issue a confirmation that the filing has been received," which "shall serve as proof that the filing has been filed." *Id.* "A filer will receive *subsequent* notification from the Superior Court's Clerk's Office that the filing has been accepted or rejected." *Id.* (emphasis added).

QRGC submitted its vacatur motion to the vendor, CaseFileXpress, on November 9 and received an electronic confirmation of the submission that same day. Therefore, the filing satisfied the DCRUAA's 90-day deadline even though it was later rejected and re-submitted after the deadline.

## 2. Service

While QRGC timely filed its motion, the record shows that it did not timely serve appellees under either local law or the FAA.

Under D.C. Super. Ct. Civ. R. 70-I, service must be made in accordance with Rule 4, which requires service within 60 days. D.C. Super. Ct. Civ. R. 4(m)(1)(A). Rule 70-I explicitly states that "[t]he *motion and a summons* must be served" on the opposing party. *Id.* (emphasis added). The interim award was issued on August 12, 2021. QRGC's November 11 email contained neither the motion nor a summons. QRGC referenced the vacatur motion but did not attach a copy, nor did it ask the appellees to accept electronic service. QRGC ultimately served the appellees with the motion in January 2022, but that was too late under the D.C. rules.

The FAA's notice and service provision, 9 U.S.C. § 12, appears to be a poor fit for motions to vacate filed in state court, *see Joseph v. Advest, Inc.*, 906 A.2d 1205, 1209-13 (Pa. Super. Ct. 2006) (holding that state rules, rather than FAA Section 12, govern the timing requirements of motions to vacate arbitration awards filed in state court), but, to the extent it applies (and we take no position on whether it does), QRGC did not comply with it either. Section 12 provides that "[n]otice of a motion to vacate, modify, or correct an [arbitration] award must be served upon the adverse party or his attorney within three months after the award is filed or

delivered." 9 U.S.C. § 12.  QRGC argues that the FAA requires only "notice" of the filing within three months, rather than actual service.  Even assuming that is true, it does not appear that QRGC served notice in accordance with Section 12's requirements.  "If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court." *Id.*  It is unlikely that that provision refers to the service law of a state court, *see* 9 U.S.C. § 10(a) (relating to an application to vacate an arbitration award in "the United States court in and for the district wherein the award was made"), but if it does, as noted above, QRGC did not effect service as prescribed by D.C. law.  If the service law of the relevant federal district applies, the United States District Court for the District of Columbia requires that service of notice of a motion be executed through the Case Management/Electronic Case Filing (CM/ECF) system, *see* D.D.C. L. Cv. R. 5.4(d), which QRGC necessarily did not comply with here (inasmuch as it did not file its motion to vacate through CM/ECF).[2]  And "[i]f the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other

---

[2] To the extent QRGC's motion to vacate was more akin to a complaint than to a standard motion in a pre-existing action, federal rules require the filing party to serve a complaint *and* a summons on the defendant within ninety days.  Fed. R. Civ. P. 4(c), 4(m).  QRGC did not do so here.

process of the court." 9 U.S.C. § 12. There is no indication in the record and QRGC does not assert that it served the appellees through a marshal.

Therefore, whether local law or the FAA governs, QRGC did not properly serve appellees, and the trial court properly dismissed the motion on that basis.[3]

### C. Confirmation of the Arbitration Award

QRGC next argues that, even if its vacatur motion were correctly dismissed, the trial court erred by confirming the arbitration award because the motion was "dismissed" for technical reasons, rather than "denied" on substantive grounds. We agree.

D.C. Code § 16-4423(e) provides that "[i]f the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending." *Id.* In *Tung v. W.T. Cabe & Co.*, 492 A.2d 267 (D.C. 1985), we held that a "dismissal of [a] motion to vacate [an] award" functioned as a denial where it had the "clear effect" of "finally determin[ing] the rights and obligations of the

---

[3] Because QRGC's untimely service is an independent ground for affirmance, we do not address the effect of QRGC's failure to include the exhibits required by Rule 70-I. *See In re Walker*, 856 A.2d 579, 586 (D.C. 2004) ("[W]e may affirm a judgment on any valid ground . . . .").

parties." *Id.* at 268 n.1.[4]  We read *Tung* as leaving open the possibility that, in at least some cases, a dismissal may not "finally determine the rights and obligations of the parties" and therefore does not function as a denial.  *Id.*  This is one such case. As discussed above, QRGC timely filed its motion but failed to properly serve appellees in accordance with D.C. Super. Ct. Civ. R. 4.  Under Rule 4(m)(4), "the plaintiff's failure to comply with the requirements of this rule will result in the dismissal *without prejudice* of the claim."  *Id.* (emphasis added).  A dismissal without prejudice is one that, by definition, does not finally determine the rights of the parties, and therefore is not a "denial" within the meaning of D.C. Code § 16-4423(e).

Because we hold that that trial court "dismissed" rather than "denied" QRGC's vacatur motion, the trial court was not required to confirm the arbitration award.  We therefore remand for the trial court to consider whether, on the merits, the award should be confirmed.

---

[4] *Tung* interpreted a predecessor statute to D.C. Code § 16-4423 that was later repealed, but the language of both provisions is nearly identical.  *Compare* D.C. Code § 16-4311(d) (1981 ed.) ("If the application to vacate is denied and no motion to modify or correct the award is pending, the Court shall confirm the award."), *with* D.C. Code § 16-4423(e) ("If the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending.").

**IV.** **Conclusion**

For the foregoing reasons, the judgment of the Superior Court is affirmed in part and vacated in part, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*